McCARTNEY, *Public Administrator*, v. FINNELL.

DIVISION ONE.

1. **Deed: RECITAL OF CONSIDERATION.** The recital in a deed of the payment of the consideration named therein is *prima facie* evidence that it was at the time paid in some way.

2. **Administration: RECOVERY OF ASSETS: EVIDENCE.** In a suit against a son to recover assets of his father's estate, where it was shown that the father and mother had deeded him land for $6,000, evidence that, about a year thereafter, the son had executed a deed of trust for the same amount on other lands to a third person, will not support a verdict against him, there being no evidence to connect the two transactions.

3. ——: ——: ——. Evidence, in such case, that the defendant and his brother had a settlement after their father's death is incompetent where it was not shown that the settlement had anything to do with the father's estate.

4. ——: ——: ——. Declarations of the defendant that his niece would receive money from his mother's estate, standing alone, are not sufficient to show that he had money in his hands belonging to his father's estate.

5. ——: ——: ——. The fact that one has money in his hands belonging to his mother's estate will not support an action against him by the administrator of his father's estate to recover assets of the latter estate.

*Appeal from Atchison Circuit Court.*—HON. C. A. ANTHONY, Judge.

REVERSED.

*Huston & Parrish* and *John D. Campbell* for appellant.

The lower court erred in refusing to instruct the jury to find for the defendant: *First.* Because there is no evidence in the record tending to show that the defendant at the time of Fountain Finnell's death had

in his possession any "money, notes, accounts, bonds or other choses in action" belonging to deceased, as charged in the first count. *Second.* Even if the evidence had tended to show that defendant had received from deceased said money, bonds, etc., such possession unexplained is *prima facie* evidence of a sale or gift, and does not make out a conversion. *Third.* Because there is no evidence even tending to prove, that deceased, at his death, owned or made any claim to own any such money, bonds, etc. *Fourth.* Because the evidence not only fails to prove or tend to prove that deceased at his death had any "farm implements, live stock, grain or other personal property," as alleged in the first count, but affirmatively proves that he did not have any such property. *Fifth.* Because there is not a scintilla of testimony tending to prove that, at his death, Fountain Finnell had money, notes, bonds or farm implements as alleged in the second count. *Sixth.* Because there is no testimony tending to prove that at his death the deceased owned any such property or that defendant received or converted it. *Priest v. Way,* 87 Mo. 16. *Seventh.* Because there is no proof of any demand by the administrator before suit brought, nor is there any evidence of any act done by defendant tending to show a conversion in any other way. *Priest v. Way,* 87 Mo. 16. Even if the conjecture that deceased did transfer the money and choses in action to defendant, the law will presume in favor of innocence, and that it was conveyed for a good consideration, or that it was a gift. *Priest v. Way,* 87 Mo. 16; *Case v. Case,* 17 Cal. 598; *Bradish v. Bliss,* 35 Vt. 326; *Klein v. Landman,* 29 Mo. 259. Possession of money or negotiable paper imports delivery and title to the holder, and this presumption can only be rebutted by affirmative proof that the possession is wrongful. *Worcester v. Dorchester,* 64 Mass. 491; *Jones v. Chalmers,* 2 Seld. (N. Y.) 214. Where different theories consistent with innocence and fair dealing may be as fairly indulged as

that involving dishonesty and unfair dealing, the law will prefer the former. *Rumbold v. Parr*, 51 Mo. 592; *Chapman v. McIlwrath*, 77 Mo. 38 ; *Henderson v. Henderson*, 55 Mo. 534; *Ames v. Gilmore*, 59 Mo. 537.

*Lewis & Ramsay* for respondent.

There are evidence, facts and circumstances in proof in this case, such as appellant's opportunities, the situation of the parties, the absence of other interested parties, the long years without administration after the death of the father, appellant's statement to Susie Cogdill in February, 1880 (at an unguarded moment), that he had her money, which she should have on the death of her grandmother, his silence or failure to explain when written to by Dudley Roach and by Susie Cogdill, his starting to Kansas to buy cattle immediately on the arrival of Susie Cogdill at his home, and remaining away until Susie had returned to her home in Buchanan county, his conduct when Susie went to see him the second time, the fact that, but a few months before death the father had $6,000, and that for the last ten or twelve years appellant had managed and controlled the business affairs of his father, and does not show what went with the money, which, taken together with his claim in his answer that he received the money from his father by way of gift and in payment of debts due him from his father, and upon a contract made by and between himself and father (none of which were proven on trial), and the statements and admissions made by his attorneys to the jury on the trial of the case, and referred to in his instruction, numbered 5, upon which the jury were warranted in finding a verdict. In *Priest v. Way*, 87 Mo. 16, cited by appellant, there was no evidence of fraud, but proof of a gift instead. In this case there is no proof of payment of debts, or contract by and between father and son for care and attention, or

of any gift.   There is a charge in the answer of con-sideration, but no proof thereof on trial.   In *Klein v. Landman*, 29 Mo. 259, cited by appellant, there was a good consideration between father and son.   In *Chapman v. McIlwrath*, 77 Mo. 38, and in *Henderson v. Henderson*, 55 Mo. 534–560, cited by appellant, this court, as is its constant practice, again defers to the finding of the trial court as to matters of fact.   In *Ames v. Gilmore*, 59 Mo. 537, it is decided that much must be left to the court which has the witness before it.

BLACK, J.—Fountain Finnell died in March, 1877. The public administrator, into whose hands the estate was ordered, commenced this suit in January, 1888, against Simpson Finnell, a son of the deceased.   The first count of the petition states that Fountain Finnell, at the time of his death, owned a large quantity of personal property consisting of money, notes, bonds and other choses in action of the value of $8,000; also household goods, farm implements and live stock of the value of $3,000; that Simpson Finnell at the time of his father's death had charge of the money and choses in action as agent and trustee for deceased; that he took charge of the other personal property after his father's death; and that he converted all the said money and choses in action and personal property to his own use.

The second count states that deceased had at the time of his death $10,000 in money, $10,000 in notes, etc., and $2,500 worth of personal property; that defendant took possession of all such property and converted the same to his own use.

The answer is a specific denial of each averment, one of these denials being in these words: Denies that he "ever received anything from said deceased whatsoever, other than what was given to him to have and to keep as his own by said deceased, * * * or in payment for services rendered and to be rendered by defendant to his said father and mother." The answer

then sets up a claim for $5,000, for keeping and support-ing the deceased and his wife.   The reply is a general denial.

From the evidence it appears the deceased and the defendant owned some three hundred and twenty acres of land in Iowa.   The defendant purchased his father's interest in that land; and thereafter and in May, 1868, the deceased purchased two hundred and sixty-seven acres of land in Atchison county, Missouri, for the recited consideration of $5,000.   The deceased resided on this land in Atchison county from the date of the purchase in 1868 to his death in 1877.   He and his wife by a deed dated the twenty-ninth of September, 1875, conveyed the last-mentioned land to the defendant, Simpson Fin-nell, for the recited consideration of $6,000.   The plain-tiff also put in evidence a deed of trust executed by the defendant on lands other than that acquired from his father, dated in December, 1876, made to secure a note for $6,000 payable to Sullivan's Saving Institution in one year after date.

Fountain Finnell died, as has been said, in March, 1877.   He left a widow, two sons, a married daughter, and two grandchildren who were the children of a deceased daughter, Susie Cogdill being one of these grandchildren.   At the time of his death he had no stock or other personal property, save the usual house-hold and kitchen furniture, and perhaps a cow.   The defendant lived one or two miles from his father and mother.   He supported them and carried on the farm on which they resided, and which they conveyed to him in 1875.   The widow continued to reside on the same place for several years.   She finally moved to the defendant's house where she died in July, 1882.

Mrs. Roach, the married daughter of the intestate, wife of Dudley Roach, died in February, 1880.   At that time Susie Cogdill, one of the before-named grand-children of the deceased, was living with Roach.   The

defendant was present at the burial of his sister, Mrs. Roach, and at that time had a conversation with Susie. She testified that he then said to her: "I have your money, and intend you to have your grandmother's things when she is gone." At the same time defendant told her his door was open to her, and she must not marry a worthless man. She says she afterwards wrote the defendant twice about her money, but he gave her no answer; that she saw him at a subsequent date, and he said there was nothing for her.

Mrs. Wilson testified that on the occasion of the death of Mrs. Roach the defendant told Susie she need not grieve so much, that she had plenty to keep her, that she would have some money after her grandmother's death, but he did not say how much. A Mrs. Waller, speaking of the same occasion, says defendant told her Susie would have $3,000 when her grandmother died.

Plaintiff also offered some evidence of statements made by the defendant tending to show that he and his brother John, who resided in California, had and made a settlement shortly after the death of their father, but it does not appear that this settlement had any relation to their father's estate, and the evidence of John was not produced by either side.

The defendant testified in his own behalf that he did not say to Susie that he had her money, that he did not say there would be $3,000 coming to her; but he says he told her she could live with him, and that she would have some money coming to her at the death of her grandmother; that he made the same statement to Mrs. Waller, and requested her to look after his niece. Other evidence for the defendant tends to show that the farm on which deceased resided was out of repair when first purchased; that defendant made many improvements thereon, such as repairing houses, building fences, digging wells and the like. One witness says he was present when defendant paid money to Findley for land,

but he does not know now much money was paid, nor is the date of payment given. Findley is the person from whom the deceased purchased the two hundred and sixty-seven acres.

On this evidence the jury returned a verdict for the plaintiff for $5,600, with interest added from March 7, 1877, making a total of $9,377. The first question is whether the demurrer to the evidence interposed by the defendant should have been sustained. There can be no fair claim that Fountain Finnell, at the time of his death, had any personal property, except such as was the absolute property of the widow. Nor is there any evidence showing, or tending to show, that he had in his own possession, or in the possession of the defendant, any notes or other like evidence of debt. The case is at once narrowed down to the transaction concerning the conveyance of the land to the defendant by the deed dated the twenty-ninth of September, 1875, reciting a consideration of $6,000 paid by defendant to the deceased.

The question, therefore, is, whether there is any evidence tending to show that the defendant held the proceeds of that sale as the agent or trustee of the deceased at the time of his death, or whether the deceased had such proceeds in his own possession at that time and defendant converted the same to his use; for these are the two grounds of recovery set forth in the petition.

The deed recites payment of the $6,000, and that recital is *prima facie* evidence that the amount was in some way then paid by the defendant to his father. To fix a liability on defendant for that amount the plaintiff offered in evidence the deed of trust made by the defendant on other lands to secure a note of $6,000 payable to Sullivan's Saving Institution. This transaction took place more than one year after the date of the deed from Fountain Finnell and wife to the defendant, and there is nothing in the evidence to connect the two

transactions, or to show that they had anything to do with each other. The deed of trust shows that defendant owed the saving institution $6,000 at that time, and that is all it does show. We do not see that it tends to show that the defendant had in his possession $6,000, or any other sum belonging to his father. As has been said there is not a word of evidence to connect the two transactions.

There is evidence that John Finnell, a brother of the defendant, came here from California shortly after their father's death. One witness says he was at the defendant's house in the fall of 1880, according to his best recollection, and defendant then said "he had had a settlement with his brother John." This is all the evidence there is on the subject of a settlement between the brothers, and there is not a word to show that the settlement had anything whatever to do with the father's estate.

The only remaining evidence is that concerning the statements of defendant made to and concerning Susie Cogdill on the occasion of the death of Mrs. Roach early in 1880. , Susie ·says defendant told her at that time that he had her money, and that she should have her grandmother's things at her grandmother's death. Subsequently, she saw the defendant, and he said there was nothing left for her. This last interview was after the death of Mrs. Finnell, as we understand the evidence. According to Mrs. Wilson defendant said, at the time of the death of Mrs. Roach, Susie would have some money after the death of her grandmother, and Mrs. Waller's evidence is that defendant said Susie would then get $3,000. These declarations of the defendant show, or at least tend to show, that he thought this granddaughter would get something from her grandmother's estate; but this evidence standing by itself, as it does, does not show or tend to show that defendant had any money in his hands belonging to his father's estate, much less that he had converted any such

moneys to his own use. If he did have money in his hands belonging to his mother, that does not support this suit; for the plaintiff represents the estate of Mr. and not that of Mrs. Finnell.

In the plaintiff's argument it is contended that the defendant by his answer admits the receipt of the $6,000, but claims it was a gift from the father. We do not understand the answer to make any such admission. By the petition the defendant is charged with having converted to his own use personal property of almost every variety generally found on a farm. The answer denies that defendant ever received anything from said deceased whatsoever, other than what was given to him in payment of indebtedness due him or in payment of services rendered or to be rendered. There is no specific mention of the $6,000 in the petition, nor does the answer amount to an admission of the receipt of that amount.

It must be remembered that defendant and his father went to California at an early day, and returned to Iowa, and there made the joint purchase of three hundred and twenty acres of land. Afterwards, they moved to Atchison county, Missouri, and the deceased purchased the two hundred and sixty-seven acres of land. The defendant improved this land, and cultivated it, and supported his father and mother for many years, she being a great sufferer from a cancer. What the accounts were between father and son does not appear, and the defendant was not allowed to testify even as to what money or property his mother had at her death or after the death of her husband. It is manifest that the jury took the $6,000 specified in the deed, and assumed that it had never been paid, and deducted $400 as the property of the widow, and charged defendant with the balance. This was done in a suit commenced more than ten years after the death of the plaintiff's intestate. The verdict is no more than a

guess, and there is no evidence to support it, or to support any verdict in favor of the plaintiff.

The judgment is, therefore, simply reversed. BARCLAY, J., absent; the other judges concur.